**UNITED STATES, Appellee,**

v.

**David L. MARTIN, Corporal, U. S. Marine Corps, Appellant.**

No. 39,436.
NCM 78 1151.

U. S. Court of Military Appeals.

April 19, 1982.

For Appellant: *Major James P. Axelrod,* USMC (argued); *Lieutenant Commander P. B. Haskel,* JAGC, USN, and *Lieutenant Commander Patrick A. Fayle,* JAGC, USN (on brief).

For Appellee: *Lieutenant J. G. Van Winkle,* JAGC, USN (argued); *Commander T. C. Watson, Jr.,* JAGC, USN (on brief).

*Opinion*

FLETCHER, Judge:

The case of appellant before us[1] presents a variety of legal issues both granted[2] by us and certified[3] by the Judge Advocate

---

1. At his general court-martial, appellant was found guilty of a single specification of violation of Article 118, Uniform Code of Military Justice, 10 U.S.C. § 918, and sentenced to a dishonorable discharge, total forfeitures not to include allowances, confinement at hard labor for 30 years and reduction to E–1. The convening authority approved and the intermediate court affirmed the findings and sentence. 9 M.J. 731 (N.C.M.R.1979). We granted review of the issues listed in footnote 2. The Judge Advocate General of the Navy filed a Certificate for Review, setting forth the issues listed in footnote 3.

2. The following issues were granted (11 M.J. 78 [C.M.A.1981] ):

I

WHETHER THE MILITARY JUDGE MATERIALLY ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY FAILING TO GIVE A DEFENSE REQUESTED INSTRUCTION ON REASONABLE DOUBT?

II

WHETHER THE MILITARY JUDGE MATERIALLY ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY PERMITTING TESTIMONY THAT THE APPELLANT BIT AND CHEWED OBJECTS DURING PERIODS OF TENSION? IF SUCH TESTIMONY WAS MINIMALLY RELEVANT, WHETHER ITS PROBATIVE VALUE WAS SUBSTANTIALLY OUTWEIGHED BY ITS DANGER OF UNFAIR PREJUDICE TO THE APPELLANT?

3. Issues certified by the Judge Advocate General of the Navy (9 M.J. 194 [C.M.A.1980] ):

I

WAS THE U. S. NAVY COURT OF MILITARY REVIEW CORRECT, AS A MATTER OF LAW, WHEN IT HELD THAT THE AC-

General of the Navy pursuant to Article 67(b)(2) of the Uniform Code of Military Justice, 10 U.S.C. § 867(b)(2). After careful consideration of the possible errors raised, we conclude that none of the issues requires us to grant relief.

## I

■ We turn first to another example of a trial judge's equation of "reasonable doubt" with "substantial doubt," an error apparently perpetuated by the use of standard military judge's instructions. It has been made clear that such is improper and prejudicial and will result in reversal. *United States v. Cotten*, 10 M.J. 260 (C.M.A. 1981). It is equally clear that "hesitate to act" language in reasonable doubt instructions is preferred to "willing to act" language. *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954), quoted in *United States v. Cotten, supra* at 262. Prerequisite to reversal in these cases is a specific defense objection to the improper "equation of reasonable and substantial doubt." *United States v. Brooks*, 11 M.J. 420 (C.M.A.1981); *United States v. Cotten, supra*; and *United States v. Salley*, 9 M.J. 189 (C.M.A.1980).

In this case, reversal is inappropriate. Trial defense counsel failed to voice any specific objection to the use of "substantial doubt" in the military judge's instructions to the court members. In discussing pro-posed instructions outside the hearing of the members, counsel merely voiced his concern relative to the appropriateness of "willing to act" language, while presenting to the judge several proposed alternative instructions. One of these was a direct quote from E. Devitt and C. Blackmar, *Federal Jury Practice and Instructions* § 11.14 (1977). Had this instruction been accepted, appellant would have *inadvertently* benefited from the exclusion of "substantial doubt." All of these proposed alternatives, however, were declined by the military judge. These facts are in direct contrast with *United States v. Brooks, supra*, where "the defense counsel objected with extensive specificity to the equation of reasonable and substantial doubt" and *United States v. Cotten, supra* at 261, where defense counsel properly registered his objection.

## II

■ During trial of this case, expert testimony was presented regarding identification of a bite mark found on the decedent's cheek, after the reliability of the science of bite-mark identification was established. The military justice system at the time of this trial employed the test of *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), for admissibility of scientific evidence. *United States v. Hulen*, 3 M.J. 275 (C.M.A.1977). We conclude from the testimony that the

CUSED HAD STANDING TO CHALLENGE THE CONVENING AUTHORITY'S REFUSAL TO GRANT IMMUNITY TO ANOTHER INDIVIDUAL, REQUESTED AS A DEFENSE WITNESS?

### II

IF THE ANSWER TO QUESTION I, ABOVE, IS AFFIRMATIVE, WAS THE U. S. NAVY COURT OF MILITARY REVIEW CORRECT, AS A MATTER OF LAW, IN HOLDING THAT THE QUESTION OF A CONVENING AUTHORITY'S OBLIGATION TO GRANT USE IMMUNITY TO A REQUESTED DEFENSE WITNESS WOULD BE RESOLVED BY A BALANCING TEST, IN WHICH THE GOVERNMENT'S JUSTIFICATION FOR WITHHOLDING THE REQUESTED IMMUNITY WOULD BE BALANCED AGAINST THE ACCUSED'S SHOWING THAT THE REQUESTED WITNESS WOULD PROVIDE TESTIMONY OF A CLEARLY EXCULPATORY NATURE? DID THE COURT CORRECT-LY SET FORTH THE TEST TO BE SO UTILIZED AND IF IT DID, UNDER THAT TEST, SHOULD THE REQUESTED DEFENSE WITNESS HAVE BEEN IMMUNIZED?

### III

WAS THE CORRECT STANDARD OF REVIEW EMPLOYED BY THE U. S. NAVY COURT OF MILITARY REVIEW IN THE INSTANT CASE, WHEN IT UPHELD THE CONVENING AUTHORITY'S REFUSAL TO EXTEND USE IMMUNITY TO A REQUESTED DEFENSE WITNESS?

### IV

WAS THE U. S. NAVY COURT OF MILITARY REVIEW CORRECT, AS A MATTER OF LAW, IN CONCLUDING THAT BITE-MARK IDENTIFICATION HAS REACHED A SUFFICIENT LEVEL OF SCIENTIFIC RELIABILITY TO WARRANT ADMISSION INTO EVIDENCE THROUGH EXPERT TESTIMONY BEFORE A COURT-MARTIAL?

tests employed by the expert were sufficiently established to have gained general acceptance in the field of bite-mark identification.[4]

### III

We have examined granted issue II and, upon further consideration, deem the grant improvident; this issue is vacated. There remain three questions concerning the immunity of witnesses before us pursuant to the certificate of the Judge Advocate General of the Navy. After extensively examining these in light of the factual presentation of this case, we conclude it is more appropriate to answer them in *United States v. Villines,* 13 M.J. 46 (C.M.A.1982). We therefore decline to answer them here.

The decision of the United States Navy Court of Military Review is affirmed.

COOK, Judge (concurring in the result):

In Part I of his opinion, Judge Fletcher bases affirmance on the failure of trial defense counsel to make specific objection to the military judge's instruction defining reasonable doubt. At the time this case was tried (April 6, 1978, through May 19, 1978), the procedure for objecting to instructions as set forth in paragraph 73*d*, Manual for Courts-Martial, United States, 1969 (Revised edition), was that, where defense counsel wished a specific instruction, he was to submit it to the military judge and argue in support of it, or, in the contrary situation, argue against the instructions proposed by the military judge. In the instant case, trial defense counsel proposed a substitute instruction defining reasonable doubt essentially in terms later to be approved by *United States v. Salley,* 9 M.J. 189 (C.M.A.1980), and *United States v. Cotten,* 10 M.J. 260 (C.M.A.1981), and referred the military judge to the legal precepts supporting his request, which was all he was required to do. In my opinion, his failure to object in open court to the military judge's instructions did not vitiate the position he had taken earlier in closed session. I, therefore, disagree with Judge Fletcher's refusal to consider the defense challenge to the instruction given for an alleged lack of specificity. However, I concur in the disposition of the issue because I believe that this Court's decision in *United States v. Salley, supra,* enunciated a new rule which changed 30 years of military practice and that such new rule should be applied prospectively only. *See* my separate opinion in *United States v. Salley, supra* at 193; *see also* my separate dissenting opinion in *United States v. Brooks,* 11 M.J. 420, 421 (C.M.A.1981).

I disagree with the principal opinion's disposition in Part III of the second granted issue. The matter has been before the Court for a number of months, and has been briefed and argued. It deserves our consideration and resolution. *See* my concurring opinion in *United States v. Kelley,* 8 M.J. 84, 85 (C.M.A.1979). The evidentiary rule in effect at the time of trial was paragraph 137, Manual, *supra.* Applying that rule to the evidence of the accused's propensity to chew on toothbrushes and other objects in times of stress, I conclude there was no abuse of discretion in the ruling of the military judge placing the evidence before the triers of fact as relevant to the merits. Paras. 53*d* and 57, Manual, *supra; cf.* Mil.R. Evid. 103.

I agree with Judge Fletcher's disposition of the expert testimony question as set out in Part II. As to the remaining three certified issues mentioned in Part III, I have considered them in my separate opinion in *United States v. Villines,* 13 M.J. 46 (C.M.A.1982), and, for the reasons stated therein, conclude that the accused has no ground for relief. I, therefore, join in affirming the decision of the United States Navy Court of Military Review.

EVERETT, Chief Judge (dissenting):

### I

At trial the defense counsel submitted to the military judge a requested instruction

---

4. Notice should be taken of Mil.R.Evid. 702, which may broaden the *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923), rule, although we cannot comment on its effect, as it did not apply to the case as then tried.

on reasonable doubt. This requested instruction was phrased in terms of "hesitate to act" and contained no reference to "substantial" doubt. When the military judge indicated that he would not give the requested instruction, but instead would give a standard instruction on reasonable doubt, the defense counsel called to his attention that there were "certain federal cases" indicating that an instruction on reasonable doubt should be phrased in terms of "hesitate to act," rather than "willing to act." Nonetheless, the military judge gave his standard instruction in terms of willingness to act and "substantial doubt."

Since the trial of the case at bar preceded our decision in *United States v. Salley*, 9 M.J. 189 (C.M.A.1980), the error in the instruction would not concern us if defense counsel had made no objection thereto or had not requested clarification. However, here he *did* make a suitable objection, as Judge Cook has noted in his separate opinion. Accordingly, under the law established by our Court, appellant is entitled to relief unless we conclude beyond a reasonable doubt that under the circumstances of the case he was not prejudiced by the instruction. *United States v. Brooks*, 11 M.J. 420 (C.M.A.1981); *United States v. Cotten*, 10 M.J. 260 (C.M.A.1981).[1]

Insofar as prejudice is concerned, the recital of facts in the opinion of the Court of Military Review, *United States v. Martin*, 9 M.J. 731 (N.C.M.R.1979), should make it clear that if an instructional error in defining reasonable doubt is ever to result in reversal of a conviction, it should do so in the present case, where the prosecution was based on hotly disputed circumstantial evidence.

## II

The Government offered the expert testimony of a forensic odontologist to establish that a bite mark made on the deceased's

body at about the time of her death had been inflicted by her husband, appellant. As noted by the Court of Military Review, scientific testimony concerning bite marks has been allowed by many courts under similar circumstances. On the basis of these precedents and the testimony of three forensic odontologists offered during an Article 39(a), 10 U.S.C. § 839(a) session, I agree with the trial judge that this evidence was admissible.

The prosecution also offered evidence that appellant habitually bit on his tooth brush or other inanimate objects during periods of stress or tension. In turn, trial counsel in his argument on findings suggested to the court members that, in a similar manner, appellant, under the stress of strangling his wife, had bitten her and thereby left the bite mark on her body. If an expert had testified as to such a relationship between appellant's habits of biting and chewing on inanimate objects and a propensity to bite human beings, this evidence would be marginally admissible. Without being connected in this manner, this "evidence ... is too remote to have any appreciable probative value," para. 137, Manual for Courts-Martial, United States, 1969 (Revised edition) (discussing relevance); so it should not have been received. However, I doubt that its reception in this case—even though erroneous—created any substantial risk of prejudice to appellant.

## III

In the course of an Article 39(a) session, it appeared that a proposed defense witness, Corporal Hodge, would not testify because of a claimed privilege against self-incrimination. Hodge, who lived in another apartment in the building where appellant and the deceased had resided, apparently had been listed as a suspect at some point during the homicide investigation; he had also claimed his privilege against self-incrimination during the Article 32, 10 U.S.C. § 832 investigation. After ruling that Hodge had a valid claim, the military judge—in a commendable effort to assure

1. In both of these cases Judge Cook dissented; but, since there is no majority to overrule these precedents, they remain the law of our Court.

that all relevant evidence would be available to the court-martial in deciding the case—asked trial counsel to contact the convening authority about granting testimonial immunity to Hodge. Subsequently, trial counsel reported that he had apprised the convening authority of the situation but that, after consulting with his staff judge advocate, the convening authority had refused to grant such immunity and had ordered the trial counsel to "continue to march." Accordingly, the trial proceeded without the testimony of Corporal Hodge.

Obviously, the members of the Court of Military Review were concerned about the situation which resulted. Judge Root wrote an extensive concurrence on the subject; upon reconsideration, the court below modified its opinion on the immunity issue, although it felt compelled to affirm. Utilizing the rationale set forth in my dissent in *United States v. Villines*, 13 M.J. 46 (C.M.A.1982), I conclude that this decision was erroneous.

In the first place, not only the convening authority but also the military judge had the authority to grant testimonial immunity to Hodge. Thus, the military judge—who was conducting the trial and was in the best position to evaluate the importance of Hodge's testimony—should have himself ruled on whether testimonial immunity should have been granted. Indeed, it is fairly clear from the record that, if the judge had believed that he possessed the authority to immunize this witness, he would have done so.

Secondly, the convening authority's decision to deny testimonial immunity was clearly erroneous. In *Villines*, I explained that, although a grant of *testimonial* immunity does not preclude prosecution of the immunized witness, it may constitute a significant impediment to such prosecution.

Therefore, it should be granted very cautiously if the prosecutor represents to the court-martial that impediment of a prospective prosecution may result from granting immunity. However, in the case at hand, trial counsel gave no indication that the grant of testimonial immunity would disadvantage the Government in any way. Moreover, Hodge's claim of immunity was with respect to the homicide for which appellant was being prosecuted. Since there was no suggestion at any time that Martin had acted jointly with Hodge, the decision to prosecute appellant was inconsistent with any likelihood that Hodge would be prosecuted.[2] Thus, a grant of testimonial immunity to Hodge could not have affected the government's ability to conduct any prosecution which was even remotely likely to occur.[3]

Because of the pervasive confusion about the status of testimonial immunity in military justice,[4] I do not criticize the military judge or the convening authority for the error that occurred in failing to grant testimonial immunity to Hodge and compelling him to testify. Nonetheless, appellant should not be the victim of that error by being denied the benefit of testimony from a very material eye witness.

IV

"[H]ard cases make bad law." *Northern Securities Co. v. United States*, 193 U.S. 197, 400, 24 S.Ct. 436, 468, 48 L.Ed. 679 (1904) (Holmes, J., dissenting). Admittedly, there is reluctance to require another trial for an accused whom conscientious court members have convicted of murder after a lengthy trial. However, the errors committed here are major enough—especially when considered together—to require setting aside the findings of guilt and requiring a rehearing or dismissal of charges.

2. Nonetheless, Corporal Hodge's proximity at the estimated time of the homicide and various other circumstances were more than enough to justify the military judge's ruling that he had validly asserted a claim to the privilege against self-incrimination. Interestingly, prior to trial appellant had passed several polygraph tests which purported to exonerate him, while a polygraph test of Hodge had apparently indicated some deception.

3. The situation is quite different from the more typical one, exemplified by *United States v. Villines*, 13 M.J. 46 (C.M.A.1982), where the defendant and the witness seem to have been jointly involved in an illegal venture.

4. In this connection, see my dissenting opinion in *United States v. Villines, supra.*