UNITED STATES, Appellee,

v.

Private First Class Anthony S. BOTHWELL, SSN 429–27–5648, United States Army, Appellant.

CM 443219.

U.S. Army Court of Military Review.

2 Dec. 1983.

Major Lawrence F. Klar, JAGC, and Captain Donna Chapin Maizel, JAGC, were on the pleadings for appellant.

Colonel James Kucera, JAGC, Lieutenant Colonel John T. Edwards, JAGC, Captain Glenn D. Gillett, JAGC, and Captain Michael S. Child, JAGC, were on the pleadings for appellee.

Before HANSEN, McKAY and WATKINS, Appellate Military Judges.

### OPINION OF THE COURT

McKAY, Senior Judge:

Contrary to his pleas, the appellant was convicted of house-breaking and larceny. The sentence to a bad-conduct discharge, confinement at hard labor for six months, forfeiture of $367.00 pay per month for six months and reduction to the lowest enlisted grade was approved. The appellant presses several assignments of error of which only one, involving the military judge's refusal to admit expert testimony based on psychological stress evaluation (PSE), merits discussion. We affirm the findings and sentence.

Civilian defense counsel, in an out-of-court hearing, moved that a Mr. Tomlin be recognized as an expert to testify about the results of a PSE which he had administered to the appellant. Counsel averred that PSE is a form of voice analysis similar to polygraph testing, and he offered a lengthy advertising brochure, apparently written by or for Mr. Tomlin, explaining the theory of PSE and attesting to its accuracy and usefulness. Counsel offered that Mr. Tomlin would testify that it was his expert opinion that the appellant was truthful when he denied complicity in breaking into the barracks room in this case. The government objected to the proposed witness, arguing that PSE had not gained general acceptance in the scientific community. Trial counsel based his objection on acknowledgements in the brochure of criticism of PSE by the American Polygraph Association.

The military judge asked defense counsel whether there was any offer as to the reliability of PSE.[1] Defense counsel represented the reliability of PSE to be much better than that of polygraph examination, but stated that Mr. Tomlin would be better qualified to answer the court's questions about the reliability of PSE. Without calling Mr. Tomlin, the military judge held that, in the absence of a stipulation by both parties, the reliability of PSE was not adequately established to permit the admission of expert testimony based upon PSE results. The judge based his ruling upon "what I know about [PSE] and from reading this evaluation brochure ...."

Appellate defense counsel contend that the military judge improperly denied the appellant the opportunity to establish the reliability of PSE and thereby deprived him of the use of evidence crucial to his defense.

### I. *Psychological Stress Evaluation*

Like the polygraph, PSE is based on the theory that an individual will undergo measurable psychological changes when he is not telling the truth. The polygraph measures changes in the subject's heartbeat, respiration and perspiration. PSE measures changes in the subject's voice, specifically in frequency modulation, the inaudible component of the voice produced by the muscles used in speech. Frequency modulation diminishes as stress increases.

The psychological stress evaluator measures this change. The voice is recorded and played into the evaluator which receives the electronically transduced speech patterns from the recorder, analyzes them, and reg-

---

1. The brochure before the judge boasted that "highly trained and experienced examiners have a proven effective or accuracy factor of over 95%."

isters the results on a continually unwinding reel of chart paper. The PSE operator performs the crucial part of the operation by examining the chart tracings, discerning indications of stress and judging whether and to what extent those indications may be attributable to deception. Kenety, *The Psychological Stress Evaluator: The Theory, Validity and Legal Status of an Innovative "Lie Detector"*, 55 Ind.L.J. 349 (1980) [hereinafter cited as Kenety].

## II. *Establishing the Foundation of Admissibility*

 The admissibility of expert testimony based upon novel scientific techniques and principles is a preliminary question to be determined by the military judge. *See* Mil.R.Evid. 104(a). Such testimony is admissible if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." Mil.R.Evid. 702. At a minimum, to be of assistance the testimony must be relevant. Mil.R.Evid. 401. The relevance of expert testimony is, in part, a function of the reliability of the underlying scientific basis. *Neustadt Family Center, Inc. v. Bludworth*, 97 N.M. 500, 641 P.2d 531, 535 (1982); *see United States v. Helton*, 10 M.J. 820, 824 (A.F.C.M.R.1981). Reliability depends upon three factors: (1) the validity of the underlying principle; (2) the validity of the technique applying the underlying principle; and (3) the proper application of the technique on a particular occasion. Giannelli, *The Admissibility of Novel Scientific Evidence: Frye v. United States, a Half-Century Later*, 80 Colum.L.Rev. 1197, 1200–1201 (1980) [hereinafter cited as Giannelli]. Determination of the first two factors may be streamlined by judicial notice where the reliability of the principle and procedure is not subject to reasonable dispute, Mil.R.Evid. 201,[2] or has been legislatively recognized, Mil.R.Evid. 201A.[3]

*United States v. Awkard*, 597 F.2d 667 (9th Cir.), *cert. denied*, 444 U.S. 885, 100 S.Ct. 179, 62 L.Ed.2d 116 (1979); Giannelli at 1202–1203. When, however, judicial notice may not be taken of the underlying scientific principle or technique the military judge must assess the admissibility of expert testimony based thereon in light of scientific evidence available to him. *United States v. Awkard*, 597 F.2d at 669; Giannelli at 1203. *See, e.g., United States v. Martin*, 13 M.J. 66 (C.M.A.1982); *United States v. Hulen*, 3 M.J. 275 (C.M.A.1977). As the military judge in this case correctly observed, this is a determination committed to his sound discretion. *United States v. Benveniste*, 564 F.2d 335, 339 n. 3 (9th Cir. 1977); *Analysis, Military Rules of Evidence*, Manual for Courts-Martial, United States, 1969 (Revised edition) [hereinafter cited as Manual] at A18–93.

## III. *Standard of Admissibility*

 The military courts as well as most civilian jurisdictions have applied the test established in *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), as the standard of reliability by which scientific evidence and expert testimony based thereon must be judged. *United States v. Ford*, 4 U.S.C. M.A. 611, 613, 16 C.M.R. 185, 187 (1954); *United States v. Ellibee*, 13 C.M.R. 416 (A.B.R.1953). *Frye* held that testimony based upon a scientific principle or discovery would only be admissible if it had attained "general acceptance in the particular field in which in belongs." *Frye v. United States*, 293 F. at 1014. The absence of "general acceptance" language in Federal Rule of Evidence 702, adopted verbatim as the military rule, has led several circuit courts to conclude that *Frye* is no longer the standard of admissibility. *See, e.g.,*

2. The party opposing admission of the expert testimony may oppose the taking of judicial notice by offering evidence tending to dispute the reliability and general acceptance of the underlying principle or technique. Mil.R.Evid. 201(e).

3. The question of admissibility is, of course, also simplified where it is prohibited by law, or

the Manual for Courts-Martial, as was the case in courts-martial with polygraph test results and the results of procedures involving drugs or hypnosis prior to the adoption of the Military Rules of Evidence. *See* Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 142*e* (deleted by Change 5, 1 April 1982).

*United States v. Williams,* 583 F.2d 1194 (2d Cir.1978), *cert. denied,* 439 U.S. 1117, 99 S.Ct. 1025, 59 L.Ed.2d 77 (1979); *United States v. Baller,* 519 F.2d 463 (4th Cir.), *cert. denied,* 423 U.S. 1019, 96 S.Ct. 456, 46 L.Ed.2d 391 (1975); *see also United States v. Luschen,* 614 F.2d 1164, 1169 n. 3 (8th Cir.), *cert. denied,* 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980). Other circuits continue to apply *Frye. See, e.g., United States v. Distler,* 671 F.2d 954, 955, 961–962 (6th Cir.1981); *United States v. Tranowski,* 659 F.2d 750 (7th Cir.1981); *United States v. Kilgus,* 571 F.2d 508, 510 (9th Cir.1978). The Court of Military Appeals, while recognizing the issue,[4] has not yet decided it. However, we note that the Navy-Marine Court of Military Review has recently applied the *Frye* standard without citing it or Rule 702 in a case arising after the adoption of the Military Rules of Evidence. *United States v. Dodson,* 16 M.J. 921, 930 (N.M.C.M.R.1983). The analysis to the Military Rules of Evidence is of no help, as it notes only that Rule 702 "may be broader and *may* supersede *Frye* ...." Manual at A18–93. The comments of the advisory committee on the Federal Rules of Evidence do not mention *Frye.* Fed.R. Evid. 702, Advisory Committee's Note.

In the absence of any definitive authority to the contrary, we are unwilling to abandon a rule that has been applied in the military for almost thirty years. *Frye's* general acceptance standard serves as a counterbalance against the tendency of lay members to be unduly impressed with the aura of "mystic infallibility" surrounding much scientific evidence. *See United States v. Addison,* 498 F.2d 741, 744 (D.C. Cir.1974); *United States v. Helton,* 10 M.J. at 824. It "assures that those most qualified to assess the general validity of a scientific method will have the determinative voice." *United States v. Addison,* 498 F.2d at 743–744. This counterbalance is greater than that afforded by the military rules alone. Military Rule of Evidence 403 only protects against the risk of misleading the

members when the risk *substantially* outweighs the probative value of the evidence. Because the validity or reliability, and hence probative value, of a scientific principle or technique may be difficult for a judge untrained in pertinent sciences to determine, *cf. Barefoot v. Estelle,* —— U.S. ——, 103 S.Ct. 3383, 3413, 77 L.Ed.2d 1090 (Blackmun, J., dissenting) (1983), the additional condition for admissibility imposed by *Frye* is salutary. *But see* 3 Weinstein & Berger, *Weinstein's Evidence* § 702[03] (1982); Imwinkleried, *The Standard for Admitting Scientific Evidence: A Critique From The Perspective of Juror Psychology,* 100 Mil.L.Rev. 99, 111–117 (1983).

## IV. *The Military Judge's Ruling*

 Ordinarily an out-of-court hearing is necessary for the purpose of laying a foundation for the admission of expert testimony based upon novel or previously unproven scientific principles and techniques. *See* Mil.R.Evid. 104; Article 39(a), Uniform Code of Military Justice, 10 U.S.C. § 839(a) (1976). The parties should be permitted to make a full offer of proof and, if appropriate, call witnesses in an attempt to establish or rebut this foundation. *Cf. United States v. Burton,* 22 C.M.R. 427 (A.B.R.1956). Here the military judge found inadequate foundation for the admission of Mr. Tomlin's testimony concerning the results of the PSE administered to the appellant without first permitting Mr. Tomlin to testify to the reliability and general acceptance of PSE. This was error and we will test for prejudice. We conclude that Mr. Tomlin could not have established the general acceptance of PSE, and hence the admissibility of the results of the evaluation in this case.

The appellant's offer that PSE was better than polygraphy, a procedure which plainly has not garnered general acceptance in the scientific community, did nothing to establish the admissibility of the technique. Moreover, Mr. Tomlin could hardly be called impartial and appears to be more a techni-

---

**4.** Chief Judge Everett has expressed his belief, in *dicta,* that the *Frye* test has continued vitality. *United States v. Moore,* 15 M.J. 354 (C.M. A.1983) (Everett, C.J., dissenting). In *United* *States v. Martin,* 13 M.J. 66 (C.M.A.1982), Judge Fletcher observed in passing that Rule 702 "may broaden" the *Frye* rule.

cian than a scientist. *See United States v. Helton,* 10 M.J. at 824 n. 14 (experts in medical and human behavioral sciences necessary to establish validity of underlying theory of polygraphy); *United States v. Alexander,* 526 F.2d 161 (8th Cir.1975) (experts in neurology, psychiatry, and physiology may shed light upon premises of polygraphy while polygraphists seldom have expertise in these specialized sciences); *People v. Tobey,* 401 Mich. 141, 146, 257 N.W.2d 537, 539 (1977) (voice-print evidence rejected where experts favoring admissibility were not impartial because their reputations and careers were built on voice-print work); *People v. Kelly,* 17 Cal.3d 24, 39, 549 P.2d 1240, 1249, 130 Cal.Rptr. 144, 154 (1976) (technician not qualified to testify about general acceptability of technique; only scientist is sufficiently conversant with views in relevant field). Mr. Tomlin's written assessment of PSE, which the military judge did view, contained several pages of the testimonials of various law enforcement, business and academic persons. Presumably, Mr. Tomlin would have included among these, if they existed, statements by individuals who had conducted validating studies.

Against the meager potential of the appellant's case for the admissibility of PSE evidence stands the weight of case law, empirical data and articles in legal journals generally placing PSE in the "experimental" rather than the "demonstrable" stage. *See United States v. Traficant,* 566 F.Supp. 1046 (N.D.Ohio 1983) (PSE has not gained general acceptance); *Virgin Islands v. Leycock,* 93 F.R.D. 569 (D.C. Virgin Islands 1982) (PSE "probably viewed by courts" with even greater disdain than polygraphy); *People v. Tarsia,* 50 N.Y.2d 1, 427 N.Y.S.2d 944, 405 N.E.2d 188 (1980) (reliability of PSE not established even to degree of that of polygraphy); *Smith v. State,* 31 Md.App. 106, 355 A.2d 527, 535–536 (1976) (polygraph evidence generally inadmissible, *ipso facto* so is PSE evidence; "a lie detector test by any other name is still a lie detector test"); *State v. Thompson,* 381 So.2d 823 (La.1980) (PSE results inadmissible on basis of prior cases holding polygraph results inadmissi-

ble); *State v. Schouest,* 351 So.2d 462 (La. 1977) (no showing of reliability of voice stress tests, similar to PSE); *Simon Neustadt Family Center v. Bludworth,* 97 N.M. 500, 641 P.2d 531 (1982) (noting a diversity of opinion concerning the reliability of PSE; admission of PSE testimony within sound discretion of trial court); *Hearings on the Use of Polygraphs and Similar Devices by Federal Agencies before the Subcommittee on Foreign Affairs and Government Information of the House Committee on Government Operations,* 93d Cong., 2d Sess. 220–354, 428–433, 503–555 (1974) (reprinting studies with divergent conclusions on PSE reliability); Kenety at 357–362, 374 (further testing is needed to resolve controversy surrounding validity and reliability of PSE); *see also* Horvath, *The Promise and Reality of Voice Stress Analysis,* 27 J. Forensic Sci. 340, 342 (1982); Note, *The Psychological Stress Evaluator: Yesterday's Dream—Tomorrow's Nightmare,* 24 Clev.St.L.Rev. 299 (1975); Note, *The Psychological Stress Evaluator: A Recent Development in Lie Detector Technology,* 7 U.Cal.D.L.Rev. 332 (1974). We are unable to imagine anything which Mr. Tomlin alone could have said that might have led the military judge to conclude that PSE enjoys general acceptance in the scientific community. Accordingly, the military judge's erroneous refusal to allow the defense to present its expert in an attempt to lay a foundation for his testimony on the merits was not prejudicial.

The remaining assignments of error, including those raised personally by the appellant, are without merit.

The findings of guilty and the sentence are affirmed.

Chief Judge HANSEN and Judge WATKINS concur.