**Solomon MONK, also known as David L. Martin, Petitioner–Appellant,**

v.

**Colonel Gordon N. ZELEZ, Commandant, Respondent–Appellee.**

No. 89–3103.

United States Court of Appeals, Tenth Circuit.

April 25, 1990.

Stephen A. Armstrong, Fairfax, Va., for petitioner-appellant.

Benjamin L. Burgess, Jr., U.S. Atty., Connie R. DeArmond, Asst. U.S. Atty., Topeka, Kan., for respondent-appellee.

Before McKAY, BARRETT, Circuit Judges, and KANE,** District Judge.

PER CURIAM.

Petitioner-appellant Solomon Monk, a former marine corporal incarcerated since 1978 in the United States Disciplinary Barracks at Fort Leavenworth, Kansas, appeals the denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Monk, who was convicted in a general court-martial of murdering his wife, asserts that his conviction was obtained in violation of his constitutional right to due process of law because (1) the military judge's reasonable doubt instruction impermissibly lessened the prosecution's burden of proof; (2) the military judge gave an incomplete jury instruction on character evidence; (3) the government failed to grant immunity to a material de-

fense witness; (4) he was denied effective assistance of counsel; (5) the military judge refused to allow him to present exculpatory polygraph evidence; (6) the evidence was insufficient to support his conviction and (7) he was denied due process as a result of cumulative errors. We reverse denial of the writ.

## Background

On May 17, 1978, a general court-martial at Camp Pendleton, California convicted Monk (then known as David L. Martin) of the murder of his wife, Leslie Martin. The evidence at trial established that Mrs. Martin's body was discovered in the couple's apartment at 7:45 A.M. on February 7, 1978. The cause of death was asphyxiation due to strangulation. Mrs. Martin had a bite mark on her left cheek that was believed to have been inflicted at or near the time of death. The time of death was not established by the prosecution allegedly because the heated water bed on which Mrs. Martin's body was found prevented an accurate assessment from being made.

Monk, then a marine stationed at Camp Pendleton, was not at home when his wife's body was discovered, but was questioned later that morning. He was inspected for bruises and scratches at that time and none were found. Fingernail scrapings and clippings taken at that time also did not reveal any blood, skin tissues or hair from the victim. Monk denied killing his wife.

In the investigation that followed, Monk "passed" several polygraph tests regarding the events of February 7. Monk's upstairs neighbor, Corporal Hodge, who admitted entering Monk's apartment the morning of the murder, was also administered a polygraph test. His test showed deception on all material questions.[2]

---

** Honorable John L. Kane, Senior District Judge, United States District Court for the District of Colorado, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.9. This case is therefore ordered submitted without oral argument.

2. Hodge declined at trial to answer any questions relating to Monk or Martin. The military judge refused Monk's request that Hodge be granted immunity so that he could be compelled to testify.

Monk was subsequently charged with his wife's murder. He pled not guilty to the charge and testified at trial that his wife was asleep when he left for work on February 7. Defense testimony indicated that Monk had left home that day between 5:48 and 5:50 A.M., picked up a Marine colleague at a location five to seven minutes from his home at 5:55 A.M. and proceeded to his duty station. Monk relied on an alibi defense on the basis of this testimony and the testimony of neighbors that a woman was heard screaming in or near his apartment sometime between 5:55 and 6:40 A.M.[3] He also argued that the fact that Mrs. Martin's body was warm to the touch when discovered and that emergency and hospital personnel detected no signs of rigor mortis at that time indicated that she had been killed not long before her body was discovered at 7:45 A.M.

The government's theory of the case was that Monk had lost $100 gambling the night before Mrs. Martin's death and that this loss resulted in an argument that culminated with Monk murdering his wife just before he left for work the following morning. Evidence supporting this theory included a neighbor's testimony that Monk's car might have been parked outside his apartment as late as 5:55 A.M. the morning of the murder and a government expert's conclusion, "to a reasonable dental certainty," that Monk had inflicted the bite mark on Mrs. Martin's cheek. A defense expert contested both this latter conclusion and the methods by which it was reached, however, and particularly the government expert's failure to test whether dental impressions other than Monk's fit the bite mark. The defense expert testified further that ten thousand people's bites, including Monk's and Hodge's, could fit the bite print on Mrs. Martin's cheek.[4]

Monk's conviction was affirmed by the Navy Court of Military Review, *United States v. Martin*, 9 M.J. 731 (N.C.M.R.

1979), and the Court of Military Appeals, *United States v. Martin*, 13 M.J. 66 (C.M. A.1982). Both Monk and respondent-appellee Zelez agree that he has exhausted his administrative remedies.

Before bringing this action, Monk filed a civil action against the Secretary of the Navy in United States District Court for the District of Columbia. In that action, Monk sought a judgment declaring his conviction and sentence illegal and void, directing the Secretary to vacate his conviction and sentence and requiring the Secretary to grant him an honorable discharge and accumulated back pay and allowances. The district court found that it had jurisdiction over this action and granted summary judgment for Monk on the ground that the reasonable doubt instruction given at Monk's court-martial had deprived him of due process. *Monk v. Secretary of Navy*, No. 83–1853, slip op. (D.D.C. Oct. 5, 1984). This judgment was reversed by the United States Court of Appeals for the District of Columbia upon its finding that Monk's complaint was in reality a petition for writ of habeas corpus and hence could only be brought against his immediate custodian, the Commandant of the United States Disciplinary Barracks at Fort Leavenworth, in Kansas. *Monk v. Secretary of Navy*, 793 F.2d 364, 368–69 (D.C.Cir.1986). Monk then filed the present action for habeas corpus relief in the United States District Court for the District of Kansas.

### Discussion

Monk claims on appeal that the military judge's instruction concerning the concept of "reasonable doubt," either individually or coupled with numerous other alleged errors, violated his due process rights and thus requires reversal of his conviction. Because we agree that the military judge's reasonable doubt instruction was both defective and violated Monk's constitutional

---

**3.** One neighbor testified that he heard a woman yell or scream at 5:55 A.M. Another neighbor, who knew Mrs. Martin and heard the scream through the connecting wall between their apartments, testified that she heard Mrs. Martin scream at 6:40 A.M.

**4.** The defense expert also noted that Mrs. Martin's facial tissue, and hence the bite mark, had been altered by the autopsy and by blood decomposition and bacterial action before examination by the government expert.

right to conviction only upon proof beyond a reasonable doubt, we reverse on this ground and do not address Monk's other claims of constitutional error.

## A. Standard of Review

■ We review denial of a petition for writ of habeas corpus *de novo*. *Bruni v. Lewis*, 847 F.2d 561, 563 (9th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 403, 102 L.Ed.2d 391 (1988). Our review of the military conviction itself is governed by the deferential standard established by the Supreme Court in *Burns v. Wilson*, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953). In that case, the Court stated that "when a military decision has dealt fully and fairly with an allegation raised in that application [for habeas corpus], it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence." *Id.* at 142, 73 S.Ct. at 1049. In this circuit, we have interpreted this language to limit our review of military convictions generally to jurisdictional issues and to determination of whether the military gave fair consideration to each of the petitioner's constitutional claims. *See Watson v. McCotter*, 782 F.2d 143, 144 (10th Cir.), *cert. denied*, 476 U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986); *King v. Moseley*, 430 F.2d 732, 734–35 (10th Cir.1970). In appropriate cases, however, we will consider and decide constitutional issues that were also considered by the military courts. *Mendrano v. Smith*, 797 F.2d 1538, 1541–42 & n. 6 (10th Cir.1986); *see Wallis v. O'Kier*, 491 F.2d 1323, 1325 (10th Cir.), *cert. denied*, 419 U.S. 901, 95 S.Ct. 185, 42 L.Ed.2d 147 (1974); *Kennedy v. Commandant*, 377 F.2d 339, 342 (10th Cir.1967).

■ The record in this case indicates that the Military Court of Appeals considered Monk's claim that the military judge's reasonable doubt instruction deprived him of his right to due process. *See United States v. Martin*, 13 M.J. 66 (C.M. A.1982). We nonetheless hold that this constitutional claim is subject to our further review because it is both "substantial and largely free of factual questions." *Mendrano*, 797 F.2d at 1542 n. 6; *see Cal-*

*ley v. Callaway*, 519 F.2d 184, 199–203 (5th Cir.1975), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1505, 47 L.Ed.2d 760 (1976). "Consideration by the military of such [an issue] will not preclude judicial review for the military must accord to its personnel the protections of basic constitutional rights essential to a fair trial and the guarantee of due process of law." *Calley*, 519 F.2d at 203; *see Burns*, 346 U.S. at 142, 73 S.Ct. at 1048 (plurality opinion); *Wallis*, 491 F.2d at 1325 (where a military prisoner is in custody by reason of an alleged constitutional violation, "the constitutional courts of the United States have the power and are under the duty to make inquiry.").

■ In reviewing the reasonable doubt instruction itself, we recognize that this instruction "may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *United States v. McIntyre*, 836 F.2d 467, 473 (10th Cir.1987). The purpose of this review is not to determine whether "the instruction is undesirable, erroneous or even 'universally condemned,'" but rather "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp*, 414 U.S. at 146, 147, 94 S.Ct. at 400, 401; *see Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). This standard is met, and habeas corpus relief will be granted, if the instruction as given, in the context of the charge as a whole, "could mislead the jury into finding no reasonable doubt when in fact there was some." *See Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150 (1954); *United States v. Leaphart*, 513 F.2d 747, 750 (10th Cir.1975). Because the government's burden of proving guilt beyond a reasonable doubt is one of the fundamental components of due process, and the "constitutional cornerstone of the criminal justice system," *United States v. Pepe*, 501 F.2d 1142, 1143 (10th Cir.1974), an erroneous instruction on this burden requires habeas corpus relief unless it was harmless beyond a reasonable doubt. *United States v. Pinkney*, 551 F.2d 1241, 1245 (D.C.Cir.

1976); *see Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

## B. Reasonable Doubt Instruction

■ The military judge instructed the members of Monk's court-martial[5] as follows regarding the government's burden of proof and the meaning of the phrase "reasonable doubt":

> You are further advised: First, that the accused must be presumed to be innocent until his guilt is established by legal and competent evidence beyond reasonable doubt; Second, that in the case being considered, if there is reasonable doubt as to the guilt of the accused, the doubt shall be resolved in favor of the accused, and he shall be acquitted; and Third, that the burden of proof to establish the guilt of the accused beyond a reasonable doubt is upon the government.
>
> What is meant by the term "reasonable doubt"? *"Reasonable doubt" means a substantial honest, conscientious doubt* suggested by the material evidence or lack of it in the case. *It is an honest, substantial misgiving* generated by insufficiency of proof of guilt. It is not a captious doubt, nor a doubt suggested by the ingenuity of counsel or court and unwarranted by the testimony, nor a doubt born of a merciful inclination to permit the accused to escape conviction, nor a doubt prompted by sympathy for him or those connected with him. Proof beyond reasonable doubt means proof to a moral certainty although not necessarily an absolute or mathematical certainty. *If you have an abiding conviction of Corporal MARTIN's guilt such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, then you have no reasonable doubt.* The rule as to reasonable doubt extends to every element of the offense although each particular fact advanced by the prosecution which does not constitute an element, need not be established

beyond reasonable doubt. However, if, on the whole evidence, you are satisfied beyond reasonable doubt of the truth of each and every element, you should find the accused guilty. As members of the court you must bear in mind that only matters properly before the court as a whole may be considered.

Doc. 10, Ex. MM, Vol. IV at 735 (emphasis added).

Monk alleges that this charge was defective in two respects. First, he claims that the military judge erred in equating "reasonable doubt" with a "substantial" doubt or misgiving. Second, he contends that the judge erred in instructing the court-martial members that no reasonable doubt exists if they would be "willing to act" on their belief in Monk's guilt to the same extent as they would be willing to act on a belief concerning an important personal matter. Together, Monk asserts, and in the context of the charge as a whole, these alleged errors diluted the government's burden of proving Monk's guilt "beyond a reasonable doubt" and thus violated the due process clause of the fifth amendment.

There is no question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). There can also be no question that the reasonable doubt instruction given at Monk's court-martial was constitutionally defective in both aspects identified by Monk. Appellate courts have uniformly criticized and rejected jury instructions equating reasonable doubt with substantial doubt. *See, e.g., Smith v. Bordenkircher,* 718 F.2d 1273, 1276 (4th Cir.1983) (citing cases), *cert. denied,* 466 U.S. 976, 104 S.Ct. 2355, 80 L.Ed.2d 828 (1984); *see also Taylor v. Kentucky,* 436 U.S. 478, 488, 98 S.Ct. 1930, 1936, 56 L.Ed.2d 468 (1978) (definition of reasonable doubt as "a substantial doubt, a real doubt" is confusing). As the Eighth Circuit has noted, "[p]roof of guilt

---

5. The court-martial members, consisting of ten commissioned officers in this case, serve the same function in the court-martial as a jury in a civilian proceeding. *See* 10 U.S.C. § 851 (1982).

beyond a reasonable doubt would seem to require a greater evidentiary showing by the Government than proof of guilt beyond a substantial doubt." *United States v. Atkins*, 487 F.2d 257, 260 (8th Cir.1973). Thus, while "perhaps not in itself reversible error," *see Taylor*, 436 U.S. at 488, 98 S.Ct. at 1936, a jury instruction that utilizes substantial doubt language can and will require reversal unless it can be concluded beyond a reasonable doubt that the jury was not misled by this instruction. *See Chapman*, 386 U.S. at 24, 87 S.Ct. at 828; *Holland*, 348 U.S. at 140, 75 S.Ct. at 137; *see also United States v. Wright*, 542 F.2d 975, 988 (7th Cir.1976) (any court including substantial doubt language in its reasonable doubt instruction "can reasonably expect a reversal"), *cert. denied*, 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 790 (1977); *United States v. Alvero*, 470 F.2d 981, 983 (5th Cir.1972) (reversing conviction in which reasonable doubt was defined in terms of a "very substantial doubt"); *Smith*, 718 F.2d at 1277 (determining that "ameliorating instructions ... served to neutralize any negative effects" of the district court's substantial doubt language).

The "willingness to act" language identified by Monk has also been repeatedly criticized by this court and others. *See, e.g., United States v. Leaphart*, 513 F.2d 747, 750 (10th Cir.1975); *United States v. Baptiste*, 608 F.2d 666, 668 (5th Cir.1979), *cert. denied*, 450 U.S. 1000, 101 S.Ct. 1707, 68 L.Ed.2d 202 (1981); *United States v. Robinson*, 546 F.2d 309, 313 (9th Cir.1976), *cert. denied*, 430 U.S. 918, 97 S.Ct. 1333, 51 L.Ed.2d 597 (1977). As the D.C. Circuit has noted, "there is a substantial difference between a juror's verdict of guilt beyond a reasonable doubt and a person making a judgment in a matter of personal importance to him." *Scurry v. United States*, 347 F.2d 468, 470 (D.C.Cir.1965), *cert. denied*, 389 U.S. 883, 88 S.Ct. 139, 19 L.Ed.2d 179 (1967). Accordingly, the military judge's charge on this point "should have been in terms of the kind of doubt that would make a person hesitate to act,

rather than the kind on which he would be willing to act." *Holland*, 348 U.S. at 140, 75 S.Ct. at 138 (citations omitted).

Having determined that the challenged "substantial doubt" and "willing to act" language are constitutionally defective, we must now consider whether this language "so infected" Martin's court-martial that his conviction violates due process. *Cupp*, 414 U.S. at 147, 94 S.Ct. at 400. We hold that it did. "In view of the central role that the reasonable doubt standard plays 'in the administration of criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt.'" *Smith*, 718 F.2d at 1276 (quoting *Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126 (1976)). The reasonable doubt instruction in this case, viewed in the context of the charge as a whole, diluted this burden by creating a standard that "could mislead [the members of the court-martial] into finding no reasonable doubt when in fact there was some." *Holland*, 348 U.S. at 140, 75 S.Ct. at 138. The strongest language in the charge that might serve to correct this impression, that stating that "[p]roof beyond a reasonable doubt means proof to a moral certainty," [6] *see United States v. Smaldone*, 485 F.2d 1333, 1347–48 (10th Cir.1973) (holding that "moral certainty" language compensated for "willing to act" language in an otherwise proper reasonable doubt instruction), *cert. denied*, 416 U.S. 936, 94 S.Ct. 1934, 40 L.Ed.2d 286 (1974), simply is not enough in this case to overcome the possibility that the members were misled by the challenged language to impose a less stringent burden of proof on the government than is constitutionally required. Given the circumstantial and hotly contested nature of the evidence supporting Monk's conviction, we also cannot say that this error was harmless beyond a reasonable doubt. Accordingly, we reverse the district court's holding that the instructions in Monk's court-martial properly con-

---

**6.** We note, however, that this instruction has also been subject to criticism on due process grounds. *See United States v. Byrd*, 352 F.2d 570, 575 (2d Cir.1965); *see also Dunn v. Perrin*, 570 F.2d 21, 24 (1st Cir.1978), *cert. denied*, 437 U.S. 910, 98 S.Ct. 3102, 57 L.Ed.2d 1141 (1978).

veyed the concept of reasonable doubt to the court-martial members, and hence did not violate due process.[7]

Our conclusion in this regard is further strengthened by the Court of Military Appeals' own rejection of the challenged reasonable doubt instruction on due process grounds. This instruction, which was once widely used in the military courts due to its inclusion in nearly identical form in the Military Judge's Guide, was first criticized by the military's highest court in *United States v. Salley*, 9 M.J. 189 (C.M.A.1980). In that case, the court agreed

> that there is a significant difference between "reasonable" doubt and "substantial" doubt. The word substantial, according to Webster's New World Dictionary (1961), means "real; actual; true; strong; solid; firm; ample; large; or of substantial value." We think that when consideration is given to the definition and ordinary meaning of this word, there is little doubt but that its use tends to lessen the State's burden and as a natural corollary to increase the burden upon the defendant.

*Id.* at 192 (quoting *Smith v. State*, 547 S.W.2d 925, 927 (Tenn.), *cert. denied*, 434 U.S. 849, 98 S.Ct. 159, 54 L.Ed.2d 117 (1977)). The court then directed that "because of its confusing nature, any such reference [to substantial doubt] should be avoided in future instructions." *Id.* at 193. The court declined to reverse on the basis of this erroneous instruction, however, upon finding that defense counsel in that case had failed to object to the instruction or to request that it be clarified. *Id.*

In at least two subsequent cases, the Court of Military Appeals has followed through on its rejection of the substantial doubt language to reverse convictions in which this instruction was given. *See United States v. Cotten*, 10 M.J. 260 (C.M.A.1981); [8] *United States v. Brooks*, 11 M.J. 420 (C.M.A.1981). In both cases, the court found that the defense had properly objected to the instruction and that controverted evidence and testimony in each case precluded the defective instruction from being harmless beyond a reasonable doubt. *Cotten*, 10 M.J. at 262; *Brooks*, 11 M.J. at 420–21.

In Monk's own appeal to the Court of Military Appeals, Judge Fletcher, writing for the majority, confirmed that "a trial judge's equation of 'reasonable doubt' with 'substantial doubt' ... is improper and prejudicial and will result in reversal." *United States v. Martin*, 13 M.J. 66, 67 (C.M.A.1982). Chief Judge Everett agreed and stated further that "if an instructional error in defining reasonable doubt is ever to result in reversal of a conviction, it should in the present case, where the prosecution was based on hotly disputed circumstantial evidence." *Id.* at 69 (Everett, C.J., dissenting). Monk's conviction was nonetheless affirmed upon Judge Fletcher's finding that Monk had failed to object properly to the challenged instruction at trial. Although both Judge Everett and Judge Cook, the third member of the court, disagreed with this finding, *see id.* at 68 (Cook, J., concurring in the result); *id.* at 69 (Everett, C.J., dissenting), Judge Cook's concurrence with Judge Fletcher's result on the ground that *Salley, Cotten* and *Brooks*' condemnation of the military's standard reasonable doubt instruction should only be applied prospectively, a position the Court of Military Appeals has twice rejected,[9] led to affirmance of Monk's

---

**7.** The district court based its holding on the fact that the overall instructions include as many as fifteen references to the term "reasonable doubt" and its belief that the omission of the challenged substantial doubt and willing to act language would not have led to a different verdict. Memorandum and Order at 9, 1989 WL 31433 (March 31, 1989). The number of references to "reasonable doubt," however, are of little import when the members were improperly instructed as to its meaning. We also disagree that the result in this case might not have been different if the court-martial members had

been instructed on and applied the proper standard of proof to the Government's case.

**8.** In *Cotten*, the court also found the "willing to act" language to be constitutionally defective. 10 M.J. at 262.

**9.** Judge Cook advanced this argument without success in both *Salley* and *Brooks*. *See Salley*, 9 M.J. at 193 (Cook, J., concurring in the result); *Brooks*, 11 M.J. at 421 (Cook, J., dissenting). As the Court of Military Appeals stated in *Brooks*, *Salley* and *Cotten* "do not enunciate new law but

conviction. Thus, a majority of the court, although not the same majority, agreed that the reasonable doubt instruction given at Monk's court-martial violated his constitutional right to be convicted only upon proof beyond a reasonable doubt, that Monk had properly objected to this instruction at trial and that the instruction as given prejudiced Monk. These conclusions are consistent with our own analysis of the challenged instruction and our determination that it requires reversal in this case.[10]

The government acknowledges that the military judge's reasonable doubt instruction was improper, but argues nonetheless that reversal is not required for two reasons. First, the government contends, as a minority of the Court of Military Appeals found, that Monk essentially waived his right to challenge the constitutionality of the instruction because he failed to make a proper objection to it during the court-martial proceeding. The record shows, however, that defense counsel followed the procedures set forth in paragraph 73d, Manual for Court-martial, United States (Rev. ed. 1969) for objecting to instruc-

tions.[11] These included submission to the military judge of alternate, written instructions that deleted both the "substantial doubt" and "willing to act" language. Although paragraph 73d also provides that "[c]ounsel may be permitted to present argument upon proposed instructions," *id.*, and the military judge did permit such argument in this case, there is no requirement in this military rule that defense counsel argue every point addressed in their written instructions at this hearing or raise their objections again before the charge is read to the court-martial members.[12] Thus, contrary to the rule governing instructions given in a criminal proceeding in a civilian court, there is no requirement under court-martial rules of procedure that defense counsel specifically state the basis of their objections either at the separate hearing on the court's instructions or at trial. *Compare id. with* Fed.R. Crim.P. 30 (prohibiting a party from challenging an instruction on appeal "unless that party objects thereto before the jury retires to consider its verdict, stating dis-

---

resolve the question presented on the basis of the authoritative constitutional standard." 11 M.J. at 420.

**10.** The United States District Court for the District of Columbia also agreed that the reasonable doubt instruction given at Monk's court-martial was prejudicial and required reversal and that Monk had not waived his right to raise this issue on appeal. *See Monk v. Secretary of Navy,* No. 83–1853, slip op. at 10–12 (D.D.C. Oct. 5, 1984), *rev'd on other grounds,* 793 F.2d 364 (D.C.Cir.1986).

**11.** Paragraph 73d states in pertinent part:

*Preparing instructions.* If the law officer ... deems it necessary or desirable, he may recess the court so that he may have time to prepare his instructions, and he may request counsel for both sides to furnish him with proposed instructions as to a particular issue in the case or as to any or all of the offenses charged. Counsel may submit proposed instructions without such a request, however, and need not submit them even when requested to do so. If either counsel submits proposed instructions or requests instructions on any matter, the law officer ... should provide instruction on the matter if it is in issue and has not been adequately covered elsewhere in his instruction. Any proposed instructions submitted by counsel will be presented in

writing and copies will be furnished to the opposing counsel. The law officer ... may accept, reject, or modify any proposed instruction that is submitted, and may substitute instructions of his own or refuse to give any instructions on a matter included in a proposed instruction submitted by counsel, subject to the limitations above.... He will cause all proposed instructions to be marked for identification and appended to the record of trial for consideration on review. Counsel may be permitted to present argument upon proposed instructions. The members of the general court-martial will be excluded during the presentation of any argument upon a proposed instruction. The argument should be recorded and incorporated in the record.

**12.** In fact, defense counsel did specifically object to the "willing to act" language in the hearing, thus meeting even the government's proposed standard for opposing instructions in courts-martial. Given this proper objection, we would be required to review the charge as a whole, including the erroneous substantial doubt language, to determine if the charge violated due process. Accordingly, even if the government is correct that specific, verbal objection is required in military proceedings, Monk still would be entitled to raise this issue on appeal and our analysis and conclusion would be unchanged.

tinctly the matter to which that party objects and the grounds of that objection."). Accordingly, we agree with the district court below and two of the three members of the Court of Military Appeals that Monk's submission of an alternate, constitutionally correct reasonable doubt instruction constituted a proper objection to the reasonable doubt instruction given by the military judge and that he thus preserved this issue for appeal and collateral review.

The government also argues that reversal is not required here because the undisputed errors in the reasonable doubt instruction do not constitute reversible error per se and because the reasonable doubt instruction, taken as a whole, accurately conveyed the concept of reasonable doubt to the court-martial members. While we agree with the government's first proposition, we do not believe that it answers the question of whether reversal is required in this case. As described above, our review of the instructions given in Monk's court-martial persuades us that the court-martial members could have been misled by the military judge's erroneous definition of the government's burden of proof to convict Monk in spite of having reasonable doubts as to his guilt. Unlike other cases in which courts have denied relief based on similar instructional errors, the errors in the reasonable doubt instruction were not merely a small part of an otherwise correct burden of proof charge. *See, e.g., United States v. Smaldone*, 485 F.2d 1333, 1348 (10th Cir. 1973) (improper "willing to act" language does not require reversal of otherwise unobjectional jury charge), *cert. denied*, 416 U.S. 936, 94 S.Ct. 1934, 40 L.Ed.2d 286 (1974); *Darnell v. Swinney*, 823 F.2d 299, 302 (9th Cir.1987) (single use of term "substantial doubt" not reversible error), *cert. denied*, 484 U.S. 1059, 108 S.Ct. 1012, 98 L.Ed.2d 978 (1988); *Murphy v. Holland*, 776 F.2d 470, 477 (4th Cir.1985) (substantial

doubt language did not require reversal where court cautioned jury that conviction requires exclusion of "every reasonable hypothesis but that of guilt" and only used substantial doubt language as a contrast to a "mere possible doubt" that would not prevent conviction), *vacated on other grounds*, 475 U.S. 1138, 106 S.Ct. 1787, 90 L.Ed.2d 334 (1986); *Smith v. Bordenkircher*, 718 F.2d 1273, 1277 (4th Cir.1983) (reversal not required where substantial doubt language used only once and only by way of contrast), *cert. denied*, 466 U.S. 976, 104 S.Ct. 2355, 80 L.Ed.2d 828 (1984). Instead, the military judge concluded his substantive instructions and his definition of the government's burden of proof, both of which repeatedly invoked the concept of proof beyond a reasonable doubt, by specifically equating reasonable doubt with a "substantial" doubt or misgiving. Given the emphasis placed on this erroneous definition, as well as the subsequent use of the disapproved "willing to act" language, we do not believe that the negative effect of this instruction was neutralized, as the government suggests, by the military judge's instruction contrasting "reasonable doubt" with "moral certainty" [13] or by instructions defining the members' duty to weigh and consider the conflicting evidence in the case. We also disagree that repetition of the phrase "proof beyond a reasonable doubt," in describing the presumption of innocence or otherwise, was sufficient to overcome the military court's express definition of this crucial concept in unconstitutional terms. Accordingly, we hold that the reasonable doubt instruction given at Monk's court-martial violated his constitutional right to trial under the standard of proof beyond a reasonable doubt and requires that his petition for writ of habeas corpus be granted.

**13.** In *Hatheway v. Secretary of Army*, 641 F.2d 1376 (9th Cir.), *cert. denied*, 454 U.S. 864, 102 S.Ct. 324, 70 L.Ed.2d 164 (1981), the Ninth Circuit upheld an apparently identical military reasonable doubt instruction on the ground that "aspects of the instruction, while perhaps not ideal, did not obscure or distort the meaning of reasonable doubt" given language defining

proof beyond a reasonable doubt as "proof to a moral certainty." *Id.* at 1384. Even if this holding survives the military court's own rejection of this instruction, we disagree with the Ninth Circuit that this one phrase, which has also been criticized by some courts, *see* n. 6 *supra*, corrects the mistaken impression left by the remainder of the instruction.

The judgment of the United States District Court for the District of Kansas is REVERSED. The writ of habeas corpus shall issue immediately.