**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**George Howard CHRISTY, Defendant-
Appellant.**

**No. 20405.**

United States Court of Appeals,
Sixth Circuit.

June 29, 1971.

James L. Jones, Knoxville, Tenn. (court appointed), on brief for defendant-appellant.

W. Thomas Dillard, Asst. U. S. Atty., Knoxville, Tenn., for plaintiff-appellee; John L. Bowers, Jr., U. S. Atty., Knoxville, Tenn., on brief.

Before PHILLIPS, Chief Judge, PECK, Circuit Judge, and McALLISTER, Senior Circuit Judge.

JOHN W. PECK, Circuit Judge.

Appellant, George Howard Christy, together with a codefendant, was charged under a two-count indictment with passing and aiding and abetting the passing of two counterfeit $20 Federal Reserve Notes, in violation of 18 U.S.C. §§ 2 and 472. Upon a jury verdict of guilty as to both counts, appellant was sentenced to two concurrent ten year sentences.

The first count of the indictment charged that appellant passed or aided and abetted the passing of a counterfeit $20 bill at a drive-in ice cream stand in Alcoa, Tennessee. Appellant's codefendant, Grady Winkler, pled guilty to that count, and his testimony showing appellant's participation in the offense, including an arrangement for the division of the proceeds from the pass, was the basis for appellant's conviction under the first count. Except for the District Court's instruction to the jury on the issue of reasonable doubt, discussed below, appellant raises no issues on appeal as to his conviction under that count.

The second count involved the passing of an allegedly counterfeit $20 bill at a Stuckey's Pecan Shop in Bean Station, Tennessee. A conflict in the evidence concerning whether appellant or his codefendant actually passed the bill to the Stuckey's cashier is the basis for the first issue on appeal. Two employees of the Stuckey's shop, the cashier and another clerk, testified that appellant's codefendant, Grady Winkler, actually passed the questioned bill. Winkler, however, testifying as a government witness, insisted that appellant passed the bill to the cashier. In light of the inconsistencies in the government's evidence, and placing particular reliance on the fact that the government's only disinterested witnesses testified that Winkler, not appellant, actually passed the second bill, appellant contends that there was not sufficient credible evidence to submit the issue of his guilt on the second count to the jury and that the District Court erred in denying his motion for judgment of acquittal with respect to that count.

Whatever persuasive effect this argument might have had if the appellant had been charged only with the passing of the second bill, the argument falls in light of the fact that appellant was charged with aiding and abetting as well as with the actual passing. As indicated above, Winkler, appellant's codefendant testified that by prior arrangement the proceeds of each pass were to be divided between the two. Moreover, Winkler further testified that he and the appellant each received a part of the merchandise purchased at the Stuckey's shop with the questioned bill. Such evidence, if believed by the jury, would have been

sufficient to sustain a conviction as an aider and abettor since it clearly establishes appellant's participation in the crime as something which he wished to bring about. See Nye & Nissen v. United States, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949); United States v. Bradley, 421 F.2d 924 (6th Cir. 1970). Thus we are in agreement with the government's theory at trial and its contention on appeal that it was immaterial whether appellant or his codefendant actually handed the bill to the Stuckey's cashier.

■ A more troublesome issue concerning the second count involves the identification and admission into evidence of the $20 bill which was the basis of that count. The bill, which by subsequent testimony of a Secret Service agent was shown to be counterfeit, was first identified at trial by Mr. Clyde West, the proprietor of the Stuckey's shop, on the basis of his initials which appeared on the bill. Mr. West had not received the bill from appellant or his codefendant, however. Rather, the testimony showed that a cashier at the shop received a bill from the appellant or his codefendant which she suspected as being counterfeit. After appellant and his codefendant had left the premises, she took the bill to Mr. West's office, and upon finding Mr. West absent at the time, left the bill with his wife. Mr. West testified that he had received from his wife the bill which he identified in court, but there was no evidence of record clearly connecting the bill which he identified with the bill received by the cashier. At the time of the transaction the cashier did not mark the bill in any manner for later identification, nor did she attempt to identify the bill at trial as that which she received from either the appellant or his codefendant. Furthermore, Mrs. West, from whom Mr. West stated that he received the bill, did not testify at trial.

Under these circumstances we find the appellant's timely objection to the identification and admission of the bill into evidence to have been well taken. Miss-

ing from the identification process was any evidence concerning the original acquisition and subsequent custody of the bill up to the time Mr. West obtained custody of the bill. The cashier who allegedly received the bad bill did not undertake to identify it at trial, and there was a complete absence of any evidence showing how Mr. West got custody of the bill or of its relation to the offense charged. Accordingly, we hold that the bill and the testimony relating to its identification should have been excluded at trial.

■ The final question, as indicated above, concerns the District Court's charge to the jury on the issue of reasonable doubt and accordingly relates to appellant's conviction under both counts of the indictment. Specifically, appellant objects to the District Court's statement, in the midst of explaining the concept of reasonable doubt, that the government had the obligation to prove its case "so as to leave no reasonable, *substantial* doubt in the minds of the jury." (Emphasis supplied.) No objection to the charge was raised at trial, but appellant now contends that the District Court's use of the word "substantial" rose to the level of plain error because it significantly reduced the government's burden of proof at trial. Were this the District Court's only reference to or explanation of the concept of reasonable doubt, the unfortunate inclusion of the questioned word would present an issue of some magnitude. The record indicates that the circumstances were just to the contrary, however. After explaining the presumption of innocence which every accused enjoys, the District Court proceeded to instruct the jury that the presumption of innocence is overcome only after the government has proven its case beyond a reasonable doubt. In explaining this concept to the jury, the District Judge used the words "reasonable doubt" no less than nine times without any indication that the doubt had to be "substantial." The use of the word "substantial" occurred only once, and it is significant to note that it occurred immediate-

ly prior to and in connection with the Court's proper explanation of the term "reasonable doubt" as that which is not a whimsical or capricious doubt but a substantial one. See United States v. Aiken, 373 F.2d 294 (2d Cir. 1967); United States v. Heap, 345 F.2d 170 (2d Cir. 1965). In the context of the entire charge it is clear that the District Court properly charged the jury on the issue of reasonable doubt and that there was no plain error in the charge.

Accordingly, the judgment of the District Court of conviction as to the first count of the indictment is affirmed; the judgment of conviction as to the second count of the indictment is vacated and the cause is remanded for a new trial as to that count.

Ainsworth, Circuit Judge, filed a dissenting opinion, and dissented from the failure to grant a rehearing.