Keith Austin SMITH, Appellant,

v.

Donald E. BORDENKIRCHER, Warden of West Virginia Penitentiary, Appellee.

No. 83–6002.

United States Court of Appeals, Fourth Circuit.

Argued April 12, 1983.

Decided Oct. 5, 1983.

Rehearing and Rehearing En Banc Denied Dec. 21, 1983.

Gene R. Nichol, Jr., Williamsburg, Va., for appellant.

Fredrick S. Wilkerson, Asst. Atty. Gen., Charleston, W.Va. (Chauncey H. Browning, Jr., Atty. Gen., Charleston, W.Va., on brief), for appellee.

Before PHILLIPS, MURNAGHAN and CHAPMAN Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Arguing that a jury instruction given at his 1979 trial in the Circuit Court of Raleigh County, West Virginia violated his right to due process by defining "reasonable doubt" as a "good and substantial doubt . . . and one for which he who entertains such a doubt should be able to give a good and substantial reason," Keith Austin Smith appeals from the district court's denial of his petition for a writ of habeas corpus. We conclude that the challenged instruction, though troubling in two significant respects, did not deprive Smith of a fair trial. Accordingly, we affirm denial of the writ.

## I

On July 13, 1979, Smith was convicted in the Circuit Court of Raleigh County, West Virginia, of first degree murder with a recommendation of mercy in connection with the fatal shooting of Johnny Richmond.

The facts surrounding the shooting may be briefly stated.

On the evening of November 3, 1978, Smith and a sixteen-year-old companion, Ronald Morton, Jr., walked to a local store to purchase some beer. As the boys passed the Village Inn, a neighborhood bar, on their way home, Keith Smith made an obscene gesture toward Mary Smith, the decedent's sister.

After Mary Smith reported the incident to her brother, Johnny Richmond, who was inside the Village Inn with some friends, he immediately ran outside to confront Morton and the appellant. Richmond, age 24, apparently intimidated the boys, who dropped their beer. He kicked Morton in the groin, took the beer, and laughingly distributed it to patrons at the Village Inn.

Smith and Morton hurriedly returned to the Morton home, where they informed Tom Morton, Ronald's father, of their confrontation with Richmond. The senior Morton armed himself with a pistol and, his son and Keith Smith in tow, immediately went to the Village Inn, challenging Richmond to come outside. Richmond, accompanied by a group of friends, came out of the tavern and approached the Morton-Smith trio. Predictably, an argument ensued and at one point Richmond was heard to ask for a pistol.

After additional posturing, the Mortons began walking backwards down the street toward their home. As the Mortons retreated, Smith went to their home to obtain a shotgun. By the time Smith returned to the agitated scene, Tom Morton had fired several shots toward Richmond, who was picking up his shirt and yelling, "Shoot me, mother_____." Smith thereupon shot and killed Richmond.

Smith surrendered the next day. At trial, Smith called no witnesses and introduced no evidence; his theory of defense was that he was drunk and/or acted in the heat of passion at the time of the shooting. The jury was instructed that it could return one of four verdicts: (1) murder in the first degree, (2) murder in the second degree, (3)

voluntary manslaughter, and (4) involuntary manslaughter. Smith was convicted of first degree murder with a recommendation of mercy.

Smith filed a petition for appeal in the West Virginia Supreme Court of Appeals, which was refused on March 30, 1980. He subsequently petitioned that court for a writ of habeas corpus, which was also denied. Finally, on June 28, 1982, Smith filed, pursuant to 28 U.S.C. § 2254, the instant petition for a writ of habeas corpus. In his petition, Smith asserted that his conviction was marred by a variety of constitutional deficiencies. The district court refused to consider one of Smith's grounds for relief, ruling it successive, and found Smith's remaining grounds without merit. The court accordingly denied Smith's petition for a writ of habeas corpus.

Smith then filed a timely notice of appeal, and we granted his application for a certificate of probable cause. On appeal Smith presses the single claim that the definition of reasonable doubt employed at his trial unconstitutionally lowered the state's burden of proof, thereby depriving him of due process of law.

## II

### A

At the threshold, the state argues that Smith is precluded from challenging the constitutionality of the reasonable doubt instruction given at his trial because he failed to register a contemporaneous objection to that instruction as is required under West Virginia law.[1] *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). This argument lacks merit.

■ Recently, in *Adkins v. Bordenkircher,* 674 F.2d 279 (4th Cir.1982), we held that a West Virginia prisoner was not barred from collaterally attacking his conviction on

the ground that a constitutionally infirm jury instruction was given at his trial, despite the petitioner's failure to make a contemporaneous objection to the challenged instruction. We reached this result because, unlike several of its sister states, West Virginia applies its procedural default rules liberally in specific classes of cases: "[T]he West Virginia court has stated that its contemporaneous objection rule would not forestall a constitutional or jurisdictional challenge. *See Spaulding v. Warden,* 212 S.E.2d 619, 621 (W.Va.1975)." *Adkins,* 674 F.2d at 282; *see Wallace v. McKenzie,* 449 F.Supp. 802, 807 (S.D.W.Va.1978).

■ Because the state courts would not enforce West Virginia's procedural default rules to preclude consideration of Smith's claim, it may appropriately be reviewed in a federal habeas corpus proceeding. *Wainwright,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594. We accordingly turn to the merits.

### B

In its charge to the jury, the court included "State's Instruction No. 7," which reads in full:

> THE COURT INSTRUCTS THE JURY that, although the burden is upon the State to prove the prisoner guilty beyond a reasonable doubt, yet such a doubt is not a mere vague, fanciful or imaginary doubt, but is *a good and substantial doubt* based upon the evidence or lack of evidence in the case, *and one for which he who entertains such doubt should be able to give a good and substantial reason* based upon the evidence or lack of evidence in the case (emphasis added).

Smith argues that this instruction, in two distinct ways, vitiated the constitutional requirement that his guilt be proven at trial

---

1. As demonstrated by the colloquy between Smith's trial counsel and the court, counsel expressed dissatisfaction with the state's proposed instruction on reasonable doubt, but ultimately acquiesced to the charge:

    MR. ASHWORTH [Counsel for Smith]: While I don't like [State's instruction] 7 [defining reasonable doubt], I think I can't really object to it.

    THE COURT: Well, 7 is an old . . . .

    MR. ASHWORTH: It's an old stock one, I know. As I said, I think it has to stand.

beyond a reasonable doubt: first, the instruction equated "reasonable doubt" with a "good and substantial doubt"; and, second, its language implied that any juror holding such a doubt might be called upon to articulate a "good and substantial reason" for his belief. With this contention we cannot agree.

*In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), which established the requirement that the state prove every element of an offense beyond a reasonable doubt, provides the touchstone for evaluating the challenged instruction. After noting that the reasonable doubt standard is a "prime instrument for reducing the risk of convictions resting on factual error," the Court in *Winship* emphasized that the standard is "indispensable, for it 'impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue.'" *Id.* at 363–64, 90 S.Ct. at 1072; *see Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) (an instruction altering the burden of proof provides a ground for habeas corpus relief). In view of the central role that the reasonable doubt standard plays "[i]n the administration of criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364 [90 S.Ct. 1068, 1072, 25 L.Ed.2d 368] (1970)." *Estelle v. Williams,* 425 U.S. 501, 503, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126 (1976).

■ However, in judging whether the state has transgressed constitutional bounds, a federal court sitting in habeas exercises a limited role. When, as here, a collateral attack on a state conviction is premised on an assertedly erroneous jury instruction, that instruction "may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). Moreover, the question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due

process, *Cupp v. Naughten,* 414 U.S. at 147 [94 S.Ct. at 400], not merely whether 'the instruction is undesirable, erroneous or even universally condemned,' *id.* at 146 [94 S.Ct. at 400]." *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977); *Cooper v. North Carolina,* 702 F.2d 481, 483 (4th Cir.1983); *see Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982).

■ The petitioner first challenges that portion of Instruction No. 7 equating "reasonable doubt" with "good and substantial doubt." Appellate courts that have considered similar "restatements" of the reasonable doubt standard have been uniformly disapproving of such attempts to elaborate on the critical concept, *see, e.g., Whiteside v. Parke,* 705 F.2d 869, 871 (6th Cir. 1983); *United States v. Martin-Trigona,* 684 F.2d 485, 493 (7th Cir.1982); *United States v. Rodriguez,* 585 F.2d 1234, 1240–42 (5th Cir.1978), *cert. denied,* 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980), *modified on other grounds sub nom. Albernaz v. United States,* 612 F.2d 906 (1980) (en banc), *aff'd,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *Dunn v. Perrin,* 570 F.2d 21, 23 (1st Cir.1978); *see also Taylor v. Kentucky,* 436 U.S. 478, 488, 98 S.Ct. 1930, 1936, 56 L.Ed.2d 468 (1978), and often remind trial courts that "[a]ttempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury.'" *Whiteside v. Parke,* 705 F.2d 869, 871 (6th Cir.1983) (quoting *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954)); *see United States v. Allen,* 596 F.2d 227, 230 (7th Cir.1979). We share this generally disapproving view.

■ Numerous variants of the heavily-criticized language, however, have been found not to constitute reversible error in direct federal appeals, *see United States v. Rodriguez,* 585 F.2d 1234, 1240–42 (5th Cir. 1978); *United States v. Magnano,* 543 F.2d 431, 436–37 & n. 4 (2d Cir.1976); *United States v. Crouch,* 528 F.2d 625, 630–31 (7th Cir.1976); *United States v. Smith,* 468 F.2d 381 (3d Cir.1972); *United States v. Christy,* 444 F.2d 448, 450–51 (6th Cir.1971). *But*

*see United States v. Alvero,* 470 F.2d 981 (5th Cir.1972) (new trial granted where instruction defined "reasonable doubt" as "a very substantial doubt"). More to the point, a "substantial doubt" instruction standing alone has never to our knowledge provided the basis for federal habeas corpus relief, *see, e.g., Payne v. Smith,* 667 F.2d 541 (6th Cir.1981); *Hatheway v. Secretary of Army,* 641 F.2d 1376 (9th Cir.1981) (collateral review of military court-martial); *Dunn v. Perrin,* 570 F.2d 21, 23 (1st Cir. 1978).

Of course, each challenged instruction of this general sort must be assessed in its particular context to determine whether by itself it so infected the trial that due process was denied. *See Cupp,* 414 U.S. at 146, 94 S.Ct. at 400; *Bumpus v. Gunter,* 635 F.2d 907 (1st Cir.1980). We are not persuaded that due process was denied by the instruction here challenged.

First, the trial court employed the challenged term to set in contrast "a mere vague, fanciful or imaginary doubt," a concept clearly at odds with the "reasonable" doubt standard. *See generally United States v. Rodriguez,* 585 F.2d 1234, 1241 (5th Cir.1978). The trial judge's use of the term "good and substantial doubt" was, in context, more accurate than when viewed in "artificial isolation," and was not likely to "mislead the jury into finding no reasonable doubt when in fact there was some." *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954).

Moreover, several other instructions given by the trial court, some proffered by the defense, served to counteract any tendency of the "good and substantial doubt" language to lessen the state's burden of proof. Twice, the trial judge in the most emphatic terms informed the jury of the role of the presumption of innocence. And, in both instances, the jury was informed that the presumption of innocence alone was sufficient to acquit Smith unless the state pro-

duced evidence of his guilt "beyond all reasonable doubt."

Furthermore, the trial judge at several points told the jury that the state was required to prove its case beyond a reasonable doubt, making no reference to the "good and substantial" language, which was employed in only one instruction.

█ Finally, and consistent with an instruction tendered by defense counsel, the jury was instructed flatly that "proof beyond a reasonable doubt is such that excludes every reasonable hypothesis but that of guilt." We are persuaded that this definition of proof beyond a reasonable doubt, coupled with the ameliorating instructions discussed above, served to neutralize any negative effects of the "good and substantial doubt" language. The instruction, which several federal courts have held not to be required in a criminal trial, *see, e.g., United States v. Alonzo,* 681 F.2d 997 (5th Cir.1982); *United States v. Burchinal,* 657 F.2d 985 (8th Cir.1981), apprised the jury of the heavy burden of proof imposed on the state, and required the jury to acquit if a "reasonable hypothesis" of Smith's innocence remained after presentation of all the evidence. In these circumstances, we cannot say that Smith's guilt was evaluated under a reasonable doubt standard below that required by the Constitution.

█ Smith's second challenge is to that portion of Instruction No. 7 which further defined reasonable doubt as "one for which he who entertains such doubt should be able to give a good and substantial reason." [2] Smith argues that this portion of the charge, because it suggests that a juror voting to acquit might be called upon to articulate a "good and substantial reason" for his position, impermissibly lowered the state's burden of proof and perhaps actually placed upon Smith the burden of providing the jury with an articulable basis on which to acquit. After a careful review of the

---

**2.** We analyze here only the articulation aspect of the second challenged portion of Instruction No. 7 because our discussion of the "good and substantial doubt" language of the instruction pertains equally to the "good and substantial reason" terminology contained in the second prong of the instruction.

charge given at Smith's trial, we cannot agree with this contention.

The First Circuit has repeatedly wrestled with jury instructions suggesting that a reasonable doubt is one capable of articulation. Although in each case that court has soundly criticized such a formulation of reasonable doubt, it has found the language to be neither reversible error on direct appeal, *United States v. MacDonald,* 455 F.2d 1259, 1262–63 (1st Cir.1972) ("proof beyond a doubt for which you can give a reason"), nor a ground for relief in habeas corpus, *Robinson v. Callahan,* 694 F.2d 6 (1st Cir. 1982) ("a doubt for which you can give a reason"); *Bumpus v. Gunter,* 635 F.2d 907, 910 (1st Cir.1980) (a doubt "that you can stand up in the jury room and argue with principle and integrity to your fellow jurors"); *Tsoumas v. New Hampshire,* 611 F.2d 412 (1st Cir.1980) (not a doubt "that can be easily explained away"); *Dunn v. Perrin,* 570 F.2d 21, 23 (1st Cir.1978) ("a doubt as for the existence of which a reasonable person can give or suggest a good and sufficient reason"). *See also United States v. Harris,* 346 F.2d 182, 184 (4th Cir.1965) ("a doubt for which you can assign a reason") (direct appeal); *United States v. Davis,* 328 F.2d 864, 867–68 (2d Cir.1964) (a doubt for which, when asked by a fellow juror, "you can give a reason") (direct appeal).

The "articulation twist" of Instruction No. 7 represents a probably imprudent effort by the trial judge to explain to the jury in more concrete terms the meaning of the critical, but elusive, concept of reasonable doubt. Considered in total context, we are persuaded that the most reasonable interpretation—hence that most likely followed by the jury—did not have the vice urged by Smith. We read the instruction in total context as simply suggesting the need to have a doubt that could, if necessary, be held conscientiously in the face of opposition from fellow jurors. This is made plain by the court's immediately succeeding instruction, which stressed that "no juror should yield a conscientious opinion deliberately formed," but that each juror had a duty "to discuss the evidence in a spirit of fairness and candor with each other and with open minds, and to give careful consideration to the views of their fellows." This reading is further buttressed by the trial court's final instruction to the jury:

The Court instructs the jury that after you have heard the evidence, the instructions of the court and the arguments of counsel and meet and consult openly and fairly with your fellow jurors in their consideration, and one or more or you then entertain or have a reasonable doubt as to the guilt of the accused it is your duty as a juror not to surrender your own conviction as to such reasonable doubt merely because other jurors may be of a different opinion or conviction.

We recognize that there is the theoretical possibility, as urged by Smith, that the "articulation twist" of Instruction No. 7 may have conveyed to a juror the impression that "he might be questioned by the trial judge as to what exactly was his 'good and substantial reason . . .' to let the defendant off the hook." Were this the effect of the relevant language, *Winship* may well have been violated.

But we have been cautioned in the most emphatic terms to eschew reliance on "abstract and conjectural emanations from *Winship,*" *Cupp,* 414 U.S. at 149, 94 S.Ct. at 401, and we believe that to accept Smith's contention would constitute just such a reliance.

Because we are not prepared to say that Instruction No. 7 in either of its challenged elements "by itself so infected the entire trial that the resulting conviction violates due process," we affirm the district court's denial of the writ. In doing so, we emphasize that we do not approve the challenged instructions, and that they pass muster only because of their particular contextual setting in this case.

AFFIRMED.

MURNAGHAN, Circuit Judge, dissenting:

Here a man was convicted of first degree murder in circumstances the majority

agrees are "troubling in two significant respects". The crime is as serious and as detestable a one as the law undertakes to punish.

The reasonable doubt, the trial judge charged, which would preclude conviction was "a good and substantial doubt". Furthermore, the doubt should be "one for which he who entertains such doubt should be able to give a good and substantial reason".

As the majority has forthrightly pointed out, a "good and substantial doubt" instruction has evoked a "uniformly disapproving" response from appellate courts, a response to which the majority subscribes. Evidently the slight slaps on the wrist followed by affirmance of the convictions have not served the hoped for end of correction of the error *in futuro*. Trial judges as well as anyone else can appreciate that "while sticks and stones may break my bones, words will never hurt me". The stick of reversal of a conviction, or grant of a *habeas corpus* writ, subject to reprosecution if the State is so minded, is called for.

The majority relies on the fact that "a 'substantial doubt' instruction standing alone has never to our knowledge provided the basis for federal habeas corpus relief." To me that is not authority for *continuing* to follow a path proven inefficacious. Rather the experience, having established that a mere expression of disapproval, unaccompanied by sanction, does not suffice, mandates that action, not merely an insignificant tut-tut, is called for. The action for an improper trial is vacation of the result and I dissent from our failure to take the indicated action here.

With respect to the "articulation twist" to the reasonable doubt instruction also advanced as constitutional error, if it were the only fault infecting the trial, I should be prepared to accept the view of the majority. The possibility that a juror might feel called upon to form and to state valid reasons for his doubt as a consequence of the instruction seems unlikely enough to try with respect to it, once more at least, the "slap on the wrist" approach. However, coupled with the "good and substantial doubt" instruction it makes what already is bad worse and reinforces me in the conclusion that unconstitutional means have effected the conviction of Smith.

Accordingly, I would grant the writ, conditional upon West Virginia's failure, within a reasonable time, to reprosecute.