986 F.2d 1416
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
William Reid MORRIS, Defendant-Appellant.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
William Bryson MORTON, Defendant-Appellant.
 Nos. 92-5034, 92-5035.
 United States Court of Appeals,
Fourth Circuit.
 Argued: December 4, 1992
Decided: February 12, 1993
 
 1
 Appeals from the United States District Court for the Western District of North Carolina, at Charlotte. Robert D. Potter, District Judge. (CR-91-84-C)
 
 
 2
 Argued: George Vernon Laughrun, II, Goodman, Carr, Nixon & Laughrun, Charlotte, North Carolina, for Appellant Morton; Rodney Shelton Toth, Charlotte, North Carolina, for Appellant Morris.
 
 
 3
 Harry Thomas Church, Assistant United States Attorney, Charlotte, North Carolina, for Appellee.
 
 
 4
 On Brief: Thomas J. Ashcraft, United States Attorney, Charlotte, North Carolina, for Appellee.
 
 
 5
 W.D.N.C.
 
 
 6
 AFFIRMED.
 
 
 7
 Before ERVIN, Chief Judge, WILKINS, Circuit Judge, and MORGAN, United States District Judge for the Eastern District of Virginia, sitting by designation.
 
 MORGAN, District Judge:
 
 8
 Appellants William Reid Morris, Jr. and William Bryson Morton were two of twenty-one defendants named in a single count indictment in June of 1991 which alleged that they had conspired to possess cocaine with the intent to distribute it in violation of 21 U.S.C. § 846. Most of the defendants pleaded guilty prior to the trial. Morris, Morton and one other defendant were tried before a jury in the Western District of North Carolina beginning on October 10, 1991. Morris was convicted and subsequently sentenced to ninety-seven (97) months imprisonment. Morton was convicted and subsequently sentenced to one-hundred and fifty-one (151) months. Both appellants raise numerous issues on appeal relating to the conduct of the trial and sentencing. The conviction and sentences of Appellants Morris and Morton are hereby affirmed.
 
 I.
 
 9
 Appellants Morris and Morton both argue that the admission of certain evidence of firearms discovered during this investigation was erroneous and requires reversal. Trial counsel did not interpose objections to the admission of any of the weapons in question. In such circumstances, the admission of the evidence cannot be challenged on appeal unless it constitutes plain error. United States v. Vogt, 910 F.2d 1184, 1192 (4th Cir. 1990). See also Fed. R. Evid. 103(a)(1) & (d) (requiring a timely objection to an erroneous admission of evidence and allowing the court to take notice of such inadmissible evidence in the absence of an objection).
 
 
 10
 During a search of Appellant Morton's house, Gaston County Police seized nine weapons including a shotgun, various rifles (one semi-automatic) and a number of handguns. An FBI agent testified that five weapons had been seized from Appellant Morris' house and place of business. These included two semi-automatic rifles (an AR15 and an Uzi) and handguns. The Appellants now argue that the weapons were not relevant and served only to prejudice the jury toward the defendants. Since the Defendants were being tried for conspiracy to traffic in illicit drugs, evidence relevant to that crime is generally admissible. "The admission of handguns into evidence in drug cases has been consistently upheld as relevant to the issues raised by such cases." United States v. Collazo, 732 F.2d 1200, 1206 (4th Cir. 1984). See also United States v. Payne, 805 F.2d 1062, 1065 (D.C. Cir. 1986) (exclusion of evidence relating to guns found in apartment was properly denied because firearms are recognized as "tools of the trade" for narcotics dealers). Since the evidence of the weapons seized from the Appellants was relevant, it was presumptively admissible. Fed. R. Evid. 402.
 
 
 11
 Relevant evidence may only be excluded if the court were to find that "its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. Although the admission of more than a dozen weapons including such intimidating hardware as an Uzi assault rifle is likely to have some emotional effect on the jury, that does not amount to prejudice. The defendants may, as they did in this case, put on evidence tending to show that the weapons were not illegal and that such weapons have other uses than facilitating the drug trade. Such facts, however, go to the weight of the evidence and not its outright admissibility. That firearms are intimidating in and of themselves is not sufficiently prejudicial to outweigh the probative value of this evidence. The admission of the weapons seized from the Defendants was not plain error.
 
 II.
 
 12
 The Appellants argue that there was insufficient evidence to convict them of conspiracy. Specifically, they argue that there was no evidence of the element of "agreement" to commit an illegal act. The Appellants contend that the evidence supported no more than a series of mere buy-sell transactions. In order to direct an acquittal, the court must find that the evidence is insufficient as a matter of law. The sufficiency of evidence is reviewed "under the familiar standard of Jackson v. Virginia, 443 U.S. 307, 319 (1979), which inquires whether 'any rational trier of fact could have found the essential elements of the crime [charged] beyond a reasonable doubt,' and requires us in applying the standard to construe the evidence in the light most favorable to the government...." United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991).
 
 
 13
 The government has conceded that its case consisted primarily of testimonial evidence. There was no cocaine attributed to either of the Appellants which was admitted into evidence. The testimonial evidence tended to show that Morris and Morton had purchased cocaine from Robbins on a number of occasions.[1] The government did not produce any evidence that the Appellants acted in concert with each other. The evidence indicates an identical and continuing relationship of each Appellant with Robbins as their supplier.
 
 
 14
 The elements which the government must prove are"(1) an agreement between two or more persons ... [and] (2) to commit in concert an unlawful act.... Because conspiracy requires agreement between at least two persons to take concerted action, if the purposes of the alleged co-conspirators are different, though both are aimed at unlawful goals, there is no conspiracy." United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991) (citing United States v. Mancillas, 580 F.2d 1301, 1307 (7th Cir.), cert. denied 439 U.S. 958 (1978)). "Because the crime of conspiracy requires a concert of action among two or more persons for a common purpose, the mere agreement of one person to buy what another agrees to sell, standing alone, does not support a conspiracy conviction." Mancillas, 580 F.2d at 1307. See also United States v. Varelli, 407 F.2d 735 (7th Cir. 1969). In this case the common purpose of each appellant was to deal in cocaine and each of them repeatedly made purchases for resale from the same supplier.
 
 
 15
 Conspiracies may also be proven by circumstantial evidence. United States v. Brown, 856 F.2d 710, 711-12 (4th Cir. 1988). Courts distinguish between single sale purchase cases and cases in which the prosecution has presented evidence of multiple sales over a period of time. See United States v. Mancillas, 580 F.2d at 1307 (evidence suggesting an "ongoing relationship in the distribution of heroin" between buyer and seller sufficient to support conspiracy conviction). An understanding between the seller and buyer that there would be a continuing and regular supply would constitute an agreed common purpose to confederate in the distribution of narcotics.
 
 
 16
 The evidence in the present case indicates that both Appellants were being supplied substantial and regular quantities of cocaine on a weekly basis by Robbins. Robbins even kept a note pad on which he would account for orders, deliveries and money owed. The names of both Appellants appeared on this pad. Taken in a light most favorable to the government, the jury could reasonably infer that the Appellants and Robbins had conspired to assist one another in the distribution of cocaine. The district court correctly denied Appellants' motion to direct acquittal.
 
 III.
 
 17
 The district court gave the following instruction on reasonable doubt:
 
 
 18
 The government has the burden of proving [the defendant] guilty beyond a reasonable doubt and this burden remains with the government throughout the trial. If the government fails to prove the guilt of the defendant beyond a reasonable doubt, you must acquit him. The defendant is not required to prove his innocence. Now while the government's burden of proof is a strict or heavy burden, it is not necessary that the defendant's guilt be proved beyond all possible doubt. It is only required that the government's proof exclude any reasonable doubt concerning the defendant's guilt . If you are convinced that the accused has been proved guilty beyond a reasonable doubt, say so. If you are not convinced, say so.
 
 
 19
 J.App. at 582-83 (emphasis added). Attempts to explain or elaborate on the concept of reasonable doubt are generally discouraged. See, e.g., Holland v. United States, 348 U.S. 121, 140 (1954); United States v. Headspeth, 852 F.2d 753, 755 (4th Cir. 1988); Smith v. Bordenkircher, 718 F.2d 1273, 1276 (4th Cir. 1983), cert. denied, 466 U.S. 976 (1984). Merely because the district court has done so, however, will not result in automatic reversal. United States v. Moss, 756 F.2d 329, 333 (4th Cir. 1985). "[A]t some point a reasonable doubt definition may be so incomprehensible or potentially prejudicial [as] to require reversal." Id. See also United States v. Porter, 821 F.2d 968, 972 (4th Cir. 1987), cert. denied, 485 U.S. 934 (1988).
 
 
 20
 The Appellants contend that the district court lessened the government's burden in the jury's mind when it gave the instruction that "while the government's burden of proof is a strict or heavy burden, it is not necessary that the defendant's guilt be proved beyond all possible doubt." It does not appear that this instruction, taken as a whole, would measurably affect the burden on the government as perceived by the jury. In Moss, this Court found the inclusion of statements that the "presumption of innocence stays with them throughout the trial," and that the government's burden is a "strict and heavy burden" to be curative. Id. at 334. Both phrases are found on the face of the instruction complained of here. While Moss and Porter discourage any attempt to elaborate on the meaning of "reasonable doubt," the language complained of, when viewed in light of the other instructions concerning the government's burden, does not warrant reversal.
 
 IV.
 
 21
 Both Appellants argue that the district court sentenced them based upon an incorrect quantity of cocaine. Utilizing a greater quantity of drugs than the evidence supports in Guidelines sentencing increases the offense level and subjects the defendant to a longer period of incarceration. For sentencing purposes, the government must prove the quantity of drugs involved by a preponderance of the evidence. United States v. Goff, 907 F.2d 1441, 1444 (4th Cir. 1990). In determining quantity, "[n]either the Guidelines nor the courts have required precise calculations of drug quantity." United States v. Rivalta, 892 F.2d 223 (2nd Cir. 1989). "Calculating the quantity of drugs is a factual determination that [this Court] will review for clear error." United States v. Uwaeme, 975 F.2d 1016, 1018 (4th Cir. 1992).
 
 A.Appellant Morris
 
 22
 The presentence report filed regarding Appellant Morris recommended finding him responsible for 5.68 kilograms of cocaine. This amount would result in a base offense level of 32. United States Sentencing Comm'n, Guidelines Manual, App. C at 53 (Nov. 1991). At the sentencing hearing, counsel for Morris objected to the 5.68 kilograms:
 
 
 23
 THE COURT: All right. Mr. Funderburke [Defendant Morris' counsel], you are contending for three kilograms at the most? Is that what you are saying?
 
 
 24
 MR. FUNDERBURKE: Yes, Your Honor.
 
 
 25
 THE COURT: Well, two kilograms or three and a half kilograms is, I have, at level 28.... I'll have to go along with you on the amount of cocaine.
 
 
 26
 J.App. at 598-M to N.[2] Appellant Morris was sentenced using a base offense level of 28. On appeal he offers a number of formulations under which he argues the amount should have been between 0.08505 and 0.2764 kilograms rather than 2.0 or 3.0 kilograms. If the amount of cocaine for which a defendant is found responsible is between 2.0 and 3.5 kilograms the base offense level is 28. U.S.S.C. App. C at 54.
 
 
 27
 There was testimony from a government witness, Ronald Robbins, that Morris was purchasing one to two ounces per week for approximately one and one-half years. Assuming that the average quantity was one ounce and that the sales were weekly for seventy-five weeks, this would total in excess of two kilograms. If the quantity were an average of one and one-half ounces per week it would total in excess of three kilograms. By either calculation the base offense level would be 28. There was sufficient evidence before the district court to support its finding that Appellant Morris should be sentenced according to a quantity of three kilograms.
 
 B.Appellant Morton
 
 28
 The presentence report filed regarding Appellant Morton recommended finding him responsible for 14.77 kilograms of cocaine which equates to a base offense level of 32. At the sentencing hearing, counsel for Morton specifically waived objection to the drug amount. J.App. at 598 I-J. This waiver notwithstanding, there was testimony at the trial which established a sufficient quantity of cocaine to have assigned a base offense level 32. Upon establishing responsibility for an amount between five and fifteen kilograms of cocaine a defendant is subject to a base offense level of 32. U.S.S.C. App. C at 53. Robbins testified that he was selling unspecified quantities of cocaine to Morton from sometime in 1987 or 1988 until his arrest on March 24, 1988. On that day he testified that he sold Morton five ounces. He also testified that there was a subsequent period of approximately six months during which he would sell Morton five to ten ounces a week. Finally, there was testimony that Morton had received one kilogram from Robbins in January of 1989. Thus, the governments evidence was competent to establish in excess of eight kilograms. Furthermore, the presentence report stated that the FBI had information that Robbins was not Morton's only source during this period and that 14.77 kilograms was a conservative estimate. There was sufficient evidence before the district court to support its finding Appellant Morton responsible for a quantity of cocaine sufficient to sentence him based upon a base offense level of 32.
 
 V.
 
 29
 Appellant Morris argues that there was insufficient evidence of his use of a firearm to enhance his sentence under Section 2D1.1(b)(1) of the Sentencing Guidelines. He contends that the government did not present evidence that he actually possessed a firearm during any of the drug transactions. In order for the court to consider this factor in sentencing, the government must prove the possession of a firearm in connection with the underlying offense by a preponderance of the evidence. See United States v. Urrego-Linares, 870 F.2d 1234, 1238 (4th Cir. 1989) ("preponderance of the evidence" is the appropriate standard of proof for facts relied upon in sentencing under the Guidelines). Witness Robbins and witness Keever both testified that they had seen Morris carry a 9mm pistol. Robbins testified that he had seen Morris with an Uzi. Though neither witness specifically stated that they had seen him with these weapons during a drug transaction, the context in which they testified regarding Morris was their experiences in drug transactions with him. J.App. at 263-64, 107-08. There was sufficient evidence before the district court to support its finding that Appellant Morris "possessed" a weapon in connection with the drug conspiracy for which he was sentenced.
 
 VI.
 
 30
 Appellant Morris argues that a remand for resentencing is required because the district court failed to make an independent determination that he had been given the opportunity to read the presentence investigative report and review it with his counsel. "Sentence shall be imposed without unreasonable delay. Before imposing sentence the court shall (A) determine that the defendant and his counsel have had the opportunity to read and discuss the presentence investigative report ... " Fed. R. Crim. P. 32. This Court has taken a relatively literal reading of this provision.
 
 
 31
 [W]e think that a bright-line approach is mandated by the clear language of Rule 32. The district court must, without exception, determine that a defendant has had the opportunity to read and discuss the presentence investigative report with his counsel. Of course the simplest and most direct way for the district court to make this determination is simply to ask the defendant, his lawyer, or both. This is not to say that the district court must always expressly ask whether the report has been read and discussed. We recognize that often a statement by counsel or defendant will unequivocally dem onstrate that the report has been read and discussed by them, or court records may allow that the district court to infer that the defendant and defense counsel signed out and discussed it together.
 
 
 32
 United States v. Miller, 849 F.2d 896, 897-98 (4th Cir. 1988) (emphasis added).
 
 
 33
 The circuit courts take a broad spectrum of approaches as to when a violation of Rule 32 should be found. The Seventh Circuit has explicitly laid out a procedure under which district courts in that circuit are to sentence. "The district court at the sentencing hearing need directly ask the defendant only three questions-whether he or she had had an opportunity to read the report, whether the defendant and defense counsel have discussed the report and whether defense wishes to challenge any facts in the report." United States v. Rone, 743 F.2d 1169 (7th Cir. 1984).
 
 
 34
 The Eleventh Circuit takes an approach at the other end of the spectrum. "As to [the requirement that the court determine that defendant and counsel have read and discussed the presentence report, the Eleventh Circuit] has stated that the district court need not ask the defendant or counsel if they have reviewed the report so long as the defendant's objections to the report indicate that he has seen it." United States v. Phillips, 936 F.2d 1252, 1255 (11th Cir. 1991). The approach taken by this Court may be said to occupy the middle ground. It would be preferable that the question be asked directly. In the event that this step is inadvertently omitted, however, an "unequivocal" demonstration (by implication) of the defendant's review and discussion of the presentence report with counsel will suffice.
 
 
 35
 Appellant, through counsel, raised various objections to the specific contents of the report. The use of plural pronouns and nouns in this discussion with the court imply that the objections were arrived at through consultation between the Appellant and his attorney. Furthermore, when the Appellant addressed the court himself, his arguments were tailored to the same issues raised by counsel. Such coordination suggests that defendant and defense counsel must have discussed the recommendations of the presentence report in some detail. Finally, Appellant makes no representation in his brief that he had, in fact, not read and reviewed the report with his lawyer. The record itself and the absence of representations to the contrary on appeal clearly support the finding that Appellant Morris read and reviewed the presentence report with his lawyer prior to the sentencing hearing.
 
 AFFIRMED
 
 
 [1]
 As summarized by the government in its brief, Robbins testified that he supplied each and that they were his "customers." Brief of United States at 7. Two witnesses who had worked for Robbins corroborated some of these sales. One witness testified that he had purchased cocaine from Appellant Morris
 
 
 [2]
 There is some confusion in the record. Earlier in the hearing counsel was arguing that the entire amount according to the testimony would be less than two kilos and this would place him in a lower category. Guidelines Appendix C at 54